Edward & Renee Fisher
3696 Princeton Way
Medford OR 97504

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

| | |
|---|---|
| **Edward & Renee Fisher**<br><br>Plaintiff,<br><br>vs.<br><br>**Bank of America Home Loans**<br><br>Defendant | Case #   **CV 10-3079-PA**<br><br>RESPONSE TO DEFENDANTS<br>MOTION TO DISMISS |

Date:   October 14, 2010

(1) The Plaintiff, in her Original Petition, plead that Defendant charged false fees as stipulated to Plaintiff as listed on the HUD 1 Settlement Statement, included as EXHIBIT 1. Plaintiff specifically plead that Defendant, at the time of settlement of the contract, Defendant failed to provide documentation to establish that said fees were not included in those fees expressly addressed by the Real Estate Settlement Procedures Act as forbidden to be charged to Plaintiff at settlement.

(2) Plaintiff stipulated each fee charged with particularity. Plaintiff calculated the precise amount that Plaintiff would have overpaid the note had Plaintiff paid off the note as stipulated by the Truth In Lending Statement provided by Defendant (See EXHIBIT 2). Plaintiff specifically alleged that said fees were fraudulent. Plaintiff alleged that Defendant failed to provide full disclosure by failing to provide documentation to prove that the above fees were authorized by law, that the services alleged provided were necessary, that the amount charged for each service was necessary, and that Defendant did not take an undisclosed markup on said fees.

(3) Plaintiff further alleged that Defendant, acting in concert and collusion with the loan broker, toward the perpetration of a carefully contrived connivance, provided the amounts listed in the HUD 1 Settlement Statement, to the loan broker as an undisclosed yield spread premium.

25  Said undisclosed yield spread premium is alleged to be in addition to the one percent loan
26  origination fee, charged to Plaintiff, as allowed by law. Plaintiff alleged that said payment to
27  the broker of undisclosed yield spread premium was a predicate act intended to improperly
28  influence loan broker to misrepresent facts to Plaintiff, to give partial disclosure of those facts
29  which would appear favorable to the intent of the loan broker, while failing to give full
30  disclosure of other facts that would not seem favorable to the contract.

31  (4) By the above, Plaintiff stated a claim for which recovery could be had, and therefore,
32  Defendant's motion to dismiss is frivolous. Plaintiff moves the court to deny Defendant's
33  pleading, or, in the alternative, treat Defendant's pleading as a request for more definite
34  statement, in which case, Plaintiff will provide a more definite statement as requested.

35  (5) Further, Plaintiff moves the court to order sanctions against Defendant for filing a frivolous
36  pleading and for failing to speak with candor to the court as Defendant is totally inept or acted
37  with deliberate intent to improperly influence the court with false pleadings.

## STATUTE OF LIMITATIONS/ EQUITABLE TOLLING

39  (6) Plaintiff acted with due diligence by dealing only with licensed professionals. Plaintiff, by so
40  doing had cause to trust in the proactive statements of Defendants concerning the true value of
41  the property, the condition of the real estate market, and the propriety of the fees charged to
42  Plaintiff at closing. Defendants acted with deliberate malice toward Plaintiff in that Defendants
43  by making proactive statements to Plaintiff that revealed certain facts which would give a
44  reasonable person of ordinary prudence cause to believe the current loan was properly priced
45  and that said loan was the only loan Plaintiff qualified for while withholding facts which would
46  have given Plaintiff full disclosure. Defendants actively concealed the complete truth from
47  Plaintiff with the intent of defrauding Plaintiff.

48  a. The Eleventh Circuit stated that "in deciding whether the statute should be tolled, it must be
49  determined whether a 'reasonably diligent plaintiff' would have discovered the fraud." Id. ( *Sterlin v.*
50  *Biomune Systems, 154 F.3d 1191, 1201 (10th Cir. 1998))*.

51  (7) Plaintiff, once put on notice of the pervasive fraud affecting the real estate industry, acted
52  immediately with due diligence and engaged professionals to examine into the propriety of the
53  practices engaged in by Defendants.

    a. The First Circuit, based on the same rationale as the Seventh Circuit, has stated that while "'storm warnings' of the possibility of fraud trigger a plaintiff's duty to investigate in a reasonably diligent manner, . . . his cause of action is deemed to accrue on the date when he should have discovered the alleged fraud." <u>Maggio v. Gerard Freezer & Ice Co., 824 F.2d 123, 128 (1st Cir. 1987)</u>.

(8) Defendants acted in concert an collusion, one with the other, in an organized scheme wherein, from the beginning, one predicate act after another was committed against Plaintiff in order to establish trust, then use that trust to perpetrate fraud against Plaintiff by systematically making false claims to Plaintiff in order to induce Plaintiff into entering into an express contract that was based on fraud. Plaintiff acted in good faith in all things and with due diligence by only dealing with licensed professionals. In as much as all actors were professionals, duly licensed by the state and federal governments and all governed by the relevant consumer protection laws, Plaintiff had cause to expect good faith and fair dealings from said licensed professionals.

    a. "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Price v. Wells Fargo Bank, 213 Cal.App.3d 465, 478, 261 Cal. Rptr. 735 (1989); [\*15] Rest.2d Contracts § 205*. A mortgage broker has fiduciary duties. *Wyatt v. Union Mortgage Co., (1979) 24 Cal. 3d. 773. Further, In Jonathan Neil & Associates, Inc. v Jones, (2004) 33 Cal. 4th 917.*

    b. "A person who provides brokerage services to a borrower in a covered loan transaction by soliciting lenders or otherwise negotiating a consumer loan secured by real property, is the fiduciary of the consumer...this fiduciary duty [is owed] to the consumer regardless of whom else the broker may be acting as an agent for . . . The fiduciary duty of the broker is to deal with the consumer in good faith. If the broker knew or should have known that the Borrower will or has a likelihood of defaulting ... they have a fiduciary duty to the borrower not to place them in that loan." *(California Department of Real Estate, Section 8: Fiduciary Responsibility, www.dre.ca.gov).*

(9) Plaintiff had no notice of wrong doing until the improprieties of the real estate market were finally made public in the popular media.

    a. Other courts have indicated the one-year limitations period commences when the plaintiff is placed on inquiry notice, unless the plaintiff can show the actual exercise of reasonable diligence to discover the fraud. If the plaintiff can show the exercise of such diligence, the limitations period begins to run when the plaintiff actually discovers the facts underlying the alleged fraud. If, however, the plaintiff cannot show such actual diligence, constructive knowledge of the fraud is imputed to the plaintiff as of the date of inquiry notice. For example, in <u>Dodds v. Cigna Securities, Inc., 12 F.3d 346 (2d Cir. 1993)</u>, the Second Circuit stated that "when the circumstances would suggest to an investor of ordinary intelligence the probability that she has been defrauded, a duty of inquiry arises, and knowledge will be imputed to the investor who does not make such an inquiry." *Id. at 350*. The Dodds court further stated that the doctrine of "equitable tolling will stay the running of the statute of limitations only so long as the plaintiff has exercised reasonable care and diligence in seeking to learn the facts which would disclose [\*\*35] fraud." Id. (internal quotations omitted). *Sterlin v. Biomune Sys., 154 F.3d 1191, 1201.*

93  (10)     When Plaintiff became aware of potential fraud by the licensed professionals Plaintiff
94          had been induced to trust, Plaintiff made due diligent inquiry and discovered the fraud
95          complained of herein.

96   a.  Plaintiff exercised due diligence and the time limitations in the Truth in Lending Act should be
97       tolled so that the intent of the Legislature may be realized. The Seventh Circuit, essentially merging
98       the inquiry notice and reasonable diligence standards into one governing standard, has indicated that
99       a plaintiff is not put on inquiry notice until the plaintiff reasonably should have discovered the fraud.
100      See Marks v. CDW Computer Ctrs., Inc., 122 F.3d 363, 368 (7th Cir. 1997) ("Inquiry notice does not
101      begin to run unless and until the investor is able, with the exercise of reasonable diligence (whether
102      or not actually exercised), to ascertain the information needed to file suit."); see also Law v. Medco
103      Research, Inc., 113 F.3d 781, 785 (7th Cir. 1997) ("The plaintiff gets a year after he learned or
104      should have learned the facts that he must know to know that he has a claim."). An earlier Seventh
105      Circuit case, however, rejected the plaintiff's argument that "in spite of reasonable diligence, it could
106      not discover the facts underlying the defendants' fraud" and held that the one-year limitations period
107      began to run once the plaintiff was placed on inquiry notice of the possibility of fraud. Whirlpool
108      Fin. Corp. v. GN Holdings, Inc., 67 F.3d 605, 610 & n.3 (7th Cir. 1995). Sterlin v. Biomune Sys.,
109      154 F.3d 1191, 1201.

110  (11)    In the alternative, the acts as alleged against Defendants amount to criminal fraud in
111         that, in a scheme to deceive and mislead Plaintiff, Defendants, by sham and trickery, induced
112         Plaintiff into entering into a predatory loan contract wherein Plaintiff was charged amounts not
113         allowed by law. Defendants, in perpetrating the above referenced predicate acts toward their
114         carefully crafted criminal conspiracy, relied on the trust engendered by the laws intended to
115         protect Plaintiff and others similarly situated from just the sort of abuse visited on Plaintiff.

116  (12)    Plaintiff alleges a scheme of fraud and, therefore, upon proof at trial, Plaintiff has a right
117         to seek common law equitable recoupment.

### PLAINTIFF MADE CLAIMS WITH SPECIFICITY AND PARTICULARITY

119  (13) Plaintiffs alleged that the original lender overpaid the loan originator, with fees improperly
120      charged to Plaintiff at closing in order to induce the originator of the loan to breach his fiduciary
121      duty to Plaintiff. By doing this, they committed common law fraud by making false statements
122      to Plaintiff in order to convince Plaintiff that Plaintiff only qualified for a more expensive loan
123      product than Plaintiff actually qualified for. Plaintiff is prepared to prove up said claims after
124      discovery, at a trial on the merits.

125  (14) Plaintiff alleged that Defendant(s) made partial disclosure of alleged facts concerning the
126      conditions of the loan which is the basis for the issuance of the security instrument and lien
127      document at issue. Plaintiff is prepared to prove at trial, after complete discovery that

128  Defendant(s) failed to give full disclosure of facts that, if disclosed would have caused Plaintiff
129  to make a different decision than the one made.

130  (15) Plaintiff alleged that the trustee, at closing, executed a carefully contrived connivance
131  intended to apply undue pressure on Plaintiff in an effort to effect lack of full disclosure to
132  Plaintiff and induce Plaintiff to enter into a contract without said full disclosure.  Plaintiff is
133  prepared to provide proof, at trial, sufficient to convince a jury.

134  (16) Plaintiff alleges that, at closing, false fees were charged to Plaintiff by lender.  Said
135  allegations are reiterated below with specificity.  Plaintiff alleged that the original lender sold
136  the security instrument immediately after closing, but failed to transfer the lien document to the
137  purchaser of said security instrument.  Plaintiff is prepared to prove, subsequent to discovery,
138  that the lender, while still holding the security instrument, received consideration and, therefore,
139  could not be harmed rendering the lien unenforceable.

140  (17) Plaintiff alleged, and is prepared to prove at trial, that the lender maintained possession of
141  the lien document in order to be able to file an IRS Form 1099a and write the entire amount of
142  the original note off lender's capital gains tax and, thereby, receive consideration a second time.

143  (18) Plaintiff alleged, and is prepared to prove at trial that, the original security instrument, if
144  said instrument still exists, may give the holder a claim against the signator, but have no claim
145  against the property.

146  (19) Plaintiff alleged, and is prepared to prove at trial that, Bank of America Home Loans, and
147  the attorneys claiming to represent same, have committed fraud by representing to the court that
148  Bank of America Home Loans is as real party in interest in the contract of sale and has standing
149  to take said property from defendant when no such claim exists.

150  (20) Plaintiff has alleged, and is prepared to prove at trial, that the defendant(s), by claiming
151  standing to express the provisions of the contract of sale and lien, claim to be real parties in
152  interest and, therefore, under the Federal Trade Commission Holder Rule 16 CFR 433, are
153  subject to any claim Plaintiff may have against the original lender.

### A. LENDER CHARGED FALSE FEES

154

155 (21) Lender charged fees to Plaintiff that were in violation of the limitations imposed by the
156 Real Estate Settlement Procedures Act as said fees were simply contrived and not paid to a third
157 party vendor.

158 (22) Lender charged other fees that were a normal part of doing business and should have been
159 included in the finance charge.

160 (23) Below is a listing of the fees charged at settlement. Neither at settlement, nor at any other time
161 did Lender or Trustee provide documentation to show that the fees herein listed were valid,
162 necessary, reasonable, and proper to charge Petitioner.

|  |  |  |
|---|---|---|
| 801 | Loan Origination Fee | $1,497.19 |
| 802 | Loan Discount | $499.06 |
| 803 | Appraisal | $400.00 |
| 804 | Credit Report | $18.45 |
| 808 | Tax Service Fee | $81.00 |
| 809 | Flood Certification | $26.00 |
| 812 | Processing Fee | $250.00 |
| 817 | Lender Fee | $650.00 |
| 901 | Interest from 10/31/08 to 11/1/08 @ $64.26/day | $64.26 |
| 1001 | Hazard Insurance | $143.52 |
| 1004 | County Property Taxes | $1,225.53 |
| 1101 | Settlement fee | $195.00 |
| 1107 | Tax Hold Back Fee | $75.00 |
| 1108 | Title Insurance | $1,207.00 |
| 1109 | ALTA 9, 116 & 8.1 Endorsements | $100.00 |
| 1110 | Site Inspection Fee | $50.00 |
| 1111 | Local Lien Search | $15.00 |
| 1112 | Courier/Overnight Delivery Fee | $20.00 |
| 1113 | Release Service Fee | $120.00 |
| 1303 | 08-09 County Taxes 3% Discount | $5,093.25 |

163 (24) Debtor is unable to determine whether or not the above fees are valid in accordance with the
164 restrictions provided by the various consumer protection laws. Therefore it was demanded to
165 please provide;

166 a. a complete billing from each vendor who provided the above listed services;

167 b. the complete contact information for each vendor who provided a billed service;

    c.  clearly stipulate as to the specific service performed;

    d.  a showing that said service was necessary;

    e.  a showing that the cost of said service is reasonable;

    f.  a showing of why said service is not a regular cost of doing business that should rightly be included in the finance charge.

(25) The above charges have been disputed and deemed unreasonable until such time as said charges have been demonstrated to be reasonable, necessary, and in accordance with the limitations and restrictions included in any and all laws, rules, and regulations intended to protect the consumer.

(26) In the event lender fails to properly document the above charges, borrower will consider same as false charges. The effect of the above amounts that borrower would pay over the life of the note will be an overpayment of $63,526.23. This amount will be reduced by the amount of items above when said items are fully documented.

## A. RESPA PENALTIES

(27) From a cursory examination of the records, with the few available, the apparent RESPA violations are as follows:

    a.  Good Faith Estimate not within limits

    b.  No HUD-1 Booklet

    c.  Truth In Lending Statement not within limits compared to Note

    d.  Truth in Lending Statement not timely presented

    e.  HUD-1 not presented at least one day before closing

    f.  No Holder Rule Notice in Note

    g.  No 1st Payment Letter

        1.  No signed and dated :

        2.  Financial Privacy Act Disclosure;

        3.  Equal Credit Reporting Act Disclosure;

194      4. notice of right to receive appraisal report;

195      5. servicing disclosure statement;

196      6. borrower's Certification of Authorization;

197      7. notice of credit score;

198      8. RESPA servicing disclosure letter;

199      9. loan discount fee disclosure;

200      10. business insurance company arrangement disclosure;

201      11. notice of right to rescind.

202  (28) The courts have held that the borrower does not have to show harm to claim a violation of the
203  Real Estate Settlement Procedures Act, as the Act was intended to insure strict compliance. And, in
204  as much as the courts are directed to assess a penalty of no less than two hundred dollars and no more
205  than two thousand, considering the large number enumerated here, it is reasonable to consider that the
206  court will assess the maximum amount for each violation.

207  (29) Since the courts have held that the penalty for a violation of RESPA accrues at consummation of
208  the note, borrower has calculated that, the number of violations found in a cursory examination of the
209  note, if deducted from the principal, would result in an overpayment on the part of the borrower, over
210  the life of the note, of $189,170.85.

211  (30) If the violation penalty amounts for each of the unsupported fees listed above are included, the
212  amount by which the borrower would be defrauded is $173,254.89

213  (31) Adding in RESPA penalties for all the unsupported settlement fees along with the TILA/Note
214  variance, it appears that lender intended to defraud borrower in the amount of $425,951.97

## MORE DEFINITE STATEMENT

216  (32) Plaintiff is willing to prepare a more definite statement for the court. Subsequent to the filing of
217  the original complaint, Plaintiff has made inquiry and found evidence of knowing and deliberate
218  criminal acts by lenders intended to defraud Plaintiff of Plaintiff's property and is prepared to file a
219  more definite statement with the court.

## ONGOING CRIMINAL CONSPIRACY

(33) Defendant complains that the document is similar to other documents alleging wrongdoing by banks and lending institutions. This begs a question, does the wrongdoing of Defendant(s) become somehow less wrong simply because they do it to everyone? Simply because the lenders are accused by numerous plaintiffs of acting in concert and collusion, one with the other, of the perpetration of predicate acts toward the furtherance of an ongoing criminal enterprise intended to strip the people of this country of the equity in their property, and thereby, deprive them of their homes, is hardly a valid objection. It seems Defendant(s), by complaining that others have accused them of the same sorts of fraud should somehow render the claims made here less valid. This also simply demonstrates the extent of their acts of theft and fraud. Plaintiff suggests, instead of attacking the messenger, the court may consider convening a court of inquiry to examine into the fraudulent practices of the Defendant(s) and encourage the federal government to pick up the mantel and prosecute the criminal wrongdoing of the banks and lending institutions.

## CONCLUSION

(34) Plaintiff maintains that Defendant(s) motion of dismissal is without merit, and that counsel, in making said claim, has failed to speak with candor with the court.

**Respectfully Submitted,**

_____         _____
**Edward Fisher**                **Renee Fisher**

## VERIFICATION

260  We, Edward & Renee Fisher, do swear and affirm that all statements made herein are true and
261  accurate, in all respects, to the best of my knowledge.

262  Edward & Renee Fisher
263  3696 Princeton Way
264  Medford, OR 97504

**Edward Fisher**                        **Renee Fisher**

271  The Person above, who proved to me on the basis of satisfactory evidence to be the person whose
272  name is subscribed to this document and acknowledged to me that he/she executed the same in his
273  authorized capacity and that by his signature on this instrument who is the person who executed this
274  instrument.

275  I certify under PENALTY OF PERJURY under the laws of this State that the foregoing paragraph is
276  true and correct.

278  Witness my hand and official seal.

OFFICIAL SEAL
MEGHANN C CRUM
NOTARY PUBLIC- OREGON
COMMISSION NO. 450152
MY COMMISSION EXPIRES JUNE 20, 2014

**NOTARY PUBLIC IN AND FOR**                    Notary Seal
**THE STATE OF OREGON**

CERTIFICATE OF SERVICE

We, Edward & Renee Fisher, do swear and affirm that we have served a signed copy of this Response to defendants Motion to Dismiss to any and all defendants by way of U.S.P.S. regular mail on the 14 day of October, 2010.. And Certified Mail Receipt # 7010 1670 0000 6966 7807

Edward & Renee Fisher
3696 Princeton Way
Medford OR 97504

_____        _____
**Edward Fisher**                **Renee Fisher**

The Person above, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to this document and acknowledged to me that he/she executed the same in his authorized capacity and that by his signature on this instrument who is the person who executed this instrument.

I certify under PENALTY OF PERJURY under the laws of this State that the foregoing paragraph is true and correct.

Witness my hand and official seal.

_____        _____
**NOTARY PUBLIC IN AND FOR**     Notary Seal
**THE STATE OF OREGON**

OFFICIAL SEAL
MEGHANN C CRUM
NOTARY PUBLIC- OREGON
COMMISSION NO. 450152
MY COMMISSION EXPIRES JUNE 20, 2014